UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LILIA SULEMA GONZALEZ AISPURO, an individual,

            Plaintiff,

    v.

GENERAL MOTORS LLC, a Delaware Limited Liability Company; and DOES 1 through 10, inclusive,

            Defendants.

No. 2:26-cv-00375-JAM-CSK

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND**

Plaintiff, who brings state-law claims related to her purchase of a defective vehicle, moves to remand this matter to state court arguing the Court lacks diversity jurisdiction because the amount in controversy is not met. Defendant, who manufactured and distributed Plaintiff's car, opposes remand, arguing it has shown by a preponderance of the evidence that the $75,000 amount in controversy is satisfied here.

As discussed further below, the Court finds that the amount in controversy is satisfied and that the Court has diversity jurisdiction over this matter. Thus, Plaintiff's Motion to Remand is denied.

1

## I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

In 2022, Plaintiff Lilia Sulema Gonzalez Aispuro purchased a 2023 Chevrolet TrailBlazer (the "Vehicle").  Compl. ¶¶ 6, 9, ECF No. 1-1.  The Vehicle's transmission was defective, and Defendant General Motors LLC, who manufactured and distributed the Vehicle, failed to fulfill its warranty obligations to adequately repair the Vehicle after several opportunities to do so.  Id. ¶¶ 9, 12–14.  Thus, Plaintiff initiated this lawsuit on November 6, 2025, in the Sacramento County Superior Court, bringing four causes of action under the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act") for breach of the implied warranty of merchantability and violations of California Civil Code sections 1793.2(a)(3), 1793.2(b), and 1793.2(d).  Id. ¶¶ 8-33.  Plaintiff seeks actual damages, a civil penalty in the amount of two times Plaintiff's actual damages, and attorney's fees.  Id. ¶¶ 17, 24, 28, and Prayer.

Defendant removed the matter to this Court on February 11, 2026, based on 28 U.S.C. §§ 1332, 1441, and 1446, alleging the parties are diverse and the amount in controversy exceeds $75,000.  Notice Removal, ECF No. 1.  Plaintiff filed the pending Motion to Remand on March 20, 2026.  See Mem. P. & A. Supp. Pl.'s Mot. Remand ("Mot."), ECF No. 9.  This matter is fully briefed and was submitted without oral argument under Local Rule 230(g).  See Def.'s Opp'n ("Opp'n"), ECF No. 17; Pl.'s Reply ("Reply"), ECF No. 19; ECF No. 20.

## II.    LEGAL STANDARD

Federal district courts have subject matter jurisdiction over civil actions between parties with diverse citizenship

where "the amount in controversy exceeds the sum of or value of $75,000, exclusive of interests and costs."  28 U.S.C. § 1332(a).  Such an action may be removed to federal court under 28 U.S.C. § 1441(a).  It is well-established that "[r]emoval statutes are strictly construed, and any doubt about the right of removal requires resolution in favor of remand.  This rule of narrow construction both recognizes the limited jurisdiction of federal courts and protect[s] the jurisdiction of state courts." Casola v. Dexcom, Inc., 98 F.4th 947, 954 (9th Cir. 2024) (citing and quoting Moore-Thomas v. Alaska Airlines, Inc., 553 F.3d 1241, 1244 (9th Cir. 2009) and Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005)) (internal citations and quotations removed).

     "The presumption against removal means that the defendant always has the burden of establishing that removal is proper." Casola, 98 F.3d at 954 (quoting Moore-Thomas, 553 F.3d at 1244) (quotations removed).  Indeed, when removal is challenged based on whether the amount in controversy exceeds $75,000, "'the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold," unless it is clear from the face of the state court complaint.  Urbino v. Orkin Servs. of Cal., Inc., 726 F.3d 1118, 1121-22 (9th Cir. 2013) (quoting Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)).  The Ninth Circuit defines the "amount in controversy as the amount at stake in the underlying litigation, [that is,] any result of the litigation, excluding interests and costs, that entails a payment by the defendant.  This amount includes, *inter*

*alia*, damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648-49 (9th Cir. 2016) (citing and quoting Theis Rsch., Inc. v. Brown & Bain, 400 F.3d 659, 662 (9th Cir. 2005) and Guglielmino v. McKee Foods Corp., 506 F.3d 696, 701 (9th Cir. 2007) (internal quotations, citations, and brackets removed)).

In assessing whether the defendant has met its burden, a court "may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy." Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 416 (9th Cir. 2018) (citing Kroske v. U.S. Bank Corp., 432 F.3d 976, 980 (9th Cir. 2005)).

## III. OPINION

### A.   Sanctions

As a preliminary matter, the Court notes that Plaintiff's Reply is 10 pages in violation of this Court's Order re Filing Requirements that "reply memoranda are limited to five (5) pages." ECF No. 14-2.  Thus, the Court imposes monetary sanctions of $50.00 per page, or $250.00, against Plaintiff.

### B.   Amount in Controversy

Here, Plaintiff does not dispute that the Parties are diverse. See generally Mot.  Rather, Plaintiff contests jurisdiction by claiming Defendant has not established the amount in controversy exceeds $75,000. Id.  The Parties agree that it is not apparent from the face of the Complaint that the amount in controversy exceeds $75,000. See Mot. at 5; Opp'n at

1-2.  Accordingly, Defendant bears the burden of establishing by a preponderance that the amount in controversy exceeds $75,000. See Urbino, 726 F.3d 1118.  Defendant contends that the amount in controversy is satisfied by a combination of actual damages, civil penalties, and attorney's fees.  Notice Removal at 4-6; Opp'n at 2-8.  The Court addresses all three in turn below.

### 1.    Actual Damages

Plaintiff here seeks actual damages under the Song-Beverly Act, which are "equal to the actual price paid or payable by the buyer," minus the reduction in value "directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor, or its authorized service and repair facility for correction of the problem that gave rise to the nonconformity."  Cal. Civ. Code § 1793.2(d)(2)(B)-(C).  This reduction, often called the "mileage offset," is derived by determining the first relevant repair, then taking the number of miles driven before that, dividing by 120,000, and multiplying that figure by the purchase price of the vehicle.  Canesco v. Ford Motor Co., 570 F. Supp. 3d 872, 898 (S.D. Cal. 2021); see also Wickstrum v. FCA USA LLC, No. 3:20-CV-00336-L-JLB, 2021 WL 532257, at *1-2 n.2 (S.D. Cal. Feb. 12, 2021) ("The formula to calculate the mileage offset is: (number of miles driven prior to first repair attempt) / (120,000 miles) x (vehicle purchase price)." (citing Cal. Civ. Code § 1793.2(d)(2)(C))).  When calculating actual damages for the purpose of determining the amount in controversy, the Court must include the mileage offset.  See D'Amico v. Ford Motor Co., No. CV 20-2985-CJC (JCx), 2020 WL 2614610, at *2-3 (C.D. Cal.

May 21, 2020) (collecting cases); Schneider v. Ford Motor Co., 756 F. App'x 699, 701 n.3 (9th Cir. 2018).

A vehicle's purchase price encompasses the entire sale price of the vehicle, including not just the vehicle's "cash price," but also any finance charges, sales or use tax, license fees, registration fees, and other incidental fees. Canesco, 570 F. Supp. 3d at 892 (surveying cases); see also Cal. Civ. Code § 1793.2(d)(2)(B). However, negative equity, a manufacturer's rebate, any third party sold optional equipment, and unpaid financing are excluded from the price by statute. See Perez v. Gen. Motors LLC, No. 2:25-cv-09684-MCS-PVC, 2025 WL 3171905, at *2 (C.D. Cal.); Cal. Civ. Proc. Code § 871.27(b)-(d), (f); see also Cal. Civ. Proc. Code § 871.20 (indicating that section 871.27 applies to Song-Beverly claims).

Defendant has provided the Vehicle's Retail Installment Sales Contract ("RISC"), as well as the Repair Order Summary ("ROS"), to calculate damages. See Stafford Decl., Ex. A, ECF No. 17-2 (RISC); Stafford Decl., Ex. B, ECF No. 17-3 (ROS). Defendant calculates actual damages at approximately $36,536.82. Opp'n at 3. Having reviewed Defendant's calculations and evidence, the Court largely agrees with this calculation. The RISC reflects that Plaintiff agreed to pay $39,824.92 in total for the Vehicle, including a $5,500.00 downpayment, $30,318.48 financed, and a $4,006.44 finance charge. Monthly payments of $408.63 were to begin on September 8, 2022, and carry through to August 8, 2029. However, Plaintiff's initial disclosures apparently indicate that Plaintiff paid off the loan before filing suit, "as the ending balance was $0 on May 31, 2025." Id.

Thus, Plaintiff is entitled to recover the full purchase price paid, $39,824.92, minus any statutory deductions.

As for statutory deductions, the RISC shows the following amounts are included in the $39,824.92 total: $199.00 for an optional "Portfolio Etch" theft deterrent device; $1,601.00 for an optional "Portfolio Maint" service contract; and $500 for a manufacturer's rebate.  The Court agrees with Defendant that those items, which total $2,300, must be deducted from the purchase price.  See Opp'n at 3; Cal. Civ. Code § 1793.2(d)(2)(B) (excluding nonmanufacturer items installed by a dealer); see also Cal. Civ. Proc. Code § 871.27(b) ("The defendant is entitled to an offset in the calculation of the actual price paid or payable for optional equipment, service contracts, or GAP financing purchased by the plaintiff during the motor vehicle purchase or lease transaction from third parties."); id. § 871.27(d) ("Noncash credits provided by the manufacturer as a form of down-payment assistance, typically referred to as a manufacturer's rebate, shall not be included in the calculation of the actual price paid or payable . . . .").  Thus, the adjusted purchase price is $37,524.92.

Turning to the mileage offset, when Plaintiff purchased the Vehicle, there were 5 miles on the odometer.  Opp'n at 3.  On or about November 29, 2022, with 3,861 miles on the odometer, Plaintiff presented the Vehicle to a dealership for repair of the defect claim she appears to be pursuing here.  See id.; see also Stafford Decl. ¶ 3, ECF No. 17-1.  Thus, Plaintiff's use of the Vehicle prior to the discovery of the alleged defect was 3,856 miles.  Dividing that number by 120,000, and multiplying that

number by the purchase price, $37,524.92, yields an estimated mileage offset of $1,205.80.

Defendant reaches a slightly different mileage offset number, $988.10, by using the cash price of the Vehicle, $30,750.00, rather than the adjusted purchase price, $37,524.92, in its mileage offset calculation. See Opp'n at 3.  This is incorrect.  California Civil Code section 1793.2(d)(2)(C) clearly provides that the mileage offset shall be determined by using the "actual price of the new motor vehicle paid or payable by the buyer," not the cash price.  Thus, the Court will use $1,205.80 as the mileage offset here.

Even with that correction, however, the Court finds that Defendant has met its burden to show actual damages by a preponderance of the evidence and finds that the "actual" damages at issue here are approximately $36,319.12 (i.e., $37,524.92 minus $1,205.80).

Plaintiff claims these numbers are speculative and lack a sufficient evidentiary basis.  Mot. at 6–8; Reply at 1–3.  The Court disagrees.  Defendant has presented evidence and analysis of the actual damages at issue here with numbers supported by both the RISC and the ROS.  See Opp'n at 3.  This satisfies Defendant's burden under the applicable law.  Cf., e.g., Edwards v. Jaguar Land Rover N. Am. LLC, No. 21-cv-05061, 2022 WL 854515 (N.D. Cal. Mar. 23, 2022) (motion to remand granted because defendant relied on allegations in complaint, civil penalties doubling the claimed amount of damages and general arguments about attorneys' fees, and did not present evidence to meet its burden); Echemendia v. Subaru of Am., Inc., No. 20-cv-09243,

2020 WL 7311348 (C.D. Cal. Dec. 11, 2020) (defendant provided sales contract, but no other evidence or analysis to "allow the Court to reliably estimate actual damages"); Chajon v. Ford Motor Co., No. 2:18-cv-10533, 2019 WL 994019 (C.D. Cal., Jan. 8, 2019) (defendant failed to meet its burden establishing requisite amount in controversy because it relied on MSRP, did not provide other evidence or an offset calculation, and speculated about penalties and attorneys' fees).  Further, Plaintiff has not provided any alternative calculations or evidence concerning her actual damages for the Court to consider.

Accordingly, the Court finds Plaintiff's estimated actual damages are $36,319.12.  The Court now turns to the Parties' arguments regarding penalties.

## 2.    Civil Penalties

Plaintiff also seeks a statutory civil penalty of twice Plaintiff's actual damages under the Song-Beverly Act.  A buyer who establishes a willful violation of the Song-Beverly Act may recover a civil penalty of up to "two times the amount of actual damages."  Cal. Civil Code § 1794(c).  Song-Beverly civil penalties should be included in the amount in controversy calculation when a plaintiff alleges the action was willful and seeks civil penalties under the act.  See, e.g., Fang v. Ford Motor Co., No. 1:22-cv-0561-JLT-SAB, 2022 WL 3444715, at *8 (E.D. Cal. Aug. 17, 2022) (determining that the plaintiff put the civil penalties in controversy by pleading that the defendant acted willfully in failing to comply with the Song-Beverly Act and seeking up to double the actual damages in the

9

prayer for relief); Cortez Martinez v. Ford Motor Co., No. 1:18-cv-01607-LJO-JLT, 2019 WL 1988398, at *7 (E.D. Cal. May 6, 2019) (determining that civil penalties were "expressly placed into controversy by the complaint" where plaintiffs alleged the defendant's failure to comply with the Song-Beverly Act was willful and the prayer for civil penalty was "in the amount of two times Plaintiffs' actual damages"); Elenes v. FCA US LLC, No. 2:16-cv-05415-CAS, 2016 WL 6745424, at *5 (C.D. Cal. Nov. 14, 2016) ("By specifically seeking the maximum civil penalty [under the Song Beverly Act], plaintiffs placed that amount in controversy."). Moreover, "courts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to a plaintiff." Fang, 2022 WL 3444715, at *6 (quotations, citations, and modifications omitted).

Here, Plaintiff alleges that she is entitled to a "civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c)" because Defendant willfully violated California Civil Code sections 1793.2(a)(3), (b), and (d). Compl. ¶¶ 17, 24, 28, and Prayer. Thus, Defendant argues that civil penalties are properly included in the amount-in-controversy calculation. Opp'n at 6-7. Using the actual damages figure of $36,319.12 calculated above, the two-times civil penalty pursuant to Song-Beverly would equal $72,638.24, for a total of $108,957.36 in civil penalties and actual damages, surpassing the $75,000 threshold.

Plaintiff disagrees that the Court may consider civil penalties, arguing that Defendant "has proffered no evidence whatsoever that Plaintiff will receive the maximum amount of

civil penalties—or, indeed, any penalties at all.  Rather, Defendant merely assumes a civil penalty award."  Mot. at 8. Plaintiff contends that "Defendant is required to offer evidence of willfulness that might support such an award."  Id. at 9.

There is a split among district courts in the Ninth Circuit about when to include Song-Beverly Act civil penalties when calculating the amount in controversy.  See Ferguson v. Kia Motors Am. Inc., No. 2:20-cv-01192-KJM-DB, 2021 WL 1997550, at *3 (E.D. Cal. May 19, 2021) (collecting and comparing cases in Southern and Central Districts and finding inclusion of penalties was warranted based on allegations).  "On the one hand, many district courts do not require the defendant to provide evidence beyond pointing to claims arising under the Act in the complaint."  Id.  On the other, "some district courts have rejected the inclusion of civil penalties or punitive damages when the defendant has not pointed to specific allegations in the complaint that support an award of punitive damages, or provided further evidence."  Id.

The Court finds that inclusion of civil penalties is appropriate in this case.  Plaintiff makes numerous allegations of willful misconduct against Defendant in the body of her Complaint.  See Compl. ¶¶ 17, 24, 28 (alleging Defendant's failure to comply with their obligations under the Song-Beverly Act was willful because "Defendant knew of its legal obligations and intentionally declined to follow them").  She also expressly requests "a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c)" in the Prayer for Relief.  On these facts, numerous courts have found

inclusion of the civil penalties to be appropriate.  See Hernandez v. FCA US LLC, No. 1:21-cv-0745-JLT-HBK, 2022 WL 819857, at *4-5 (E.D. Cal. Mar. 18, 2022) (surveying similar cases and applying prayed-for Song Beverly civil penalty).

Further, while other district courts have found that civil penalties should not be included unless the removing defendant makes some showing regarding the likelihood of penalties, this Court respectfully disagrees.  As the Ninth Circuit has explained, the amount in controversy is not "a prospective assessment of defendant's liability."  Lewis v. Verizon Communs., Inc., 627 F.3d 395, 400 (9th Cir. 2010).  Rather, courts must "accept[ ] the allegations contained in the complaint as true and assume[ ] the jury will return a verdict in the plaintiff's favor on every claim."  Henry v. Cent. Freight Lines, Inc., 692 F. App'x 806, 807 (9th Cir. 2017).  Thus, this Court joins other courts in finding Defendant need not prove that it willfully violated the Song-Beverly Act for civil penalties to be included in the damages calculation.  See, e.g., Brooks v. Ford Motor Co., No. 5:20-cv-302-DSFKK, 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020) ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act, given that most defendants . . . will deny that [they] willfully failed to comply with the Song-Beverly Act."); Watson v. BMW of N.A., LLC, No. 2:22-cv-01514-DAD-JDP, 2022 12442891, at *4 (E.D. Cal. Oct. 21, 2022) (collecting cases); Canesco, 570 F. Supp. 3d at 902 (siding with "majority of courts and more recent cases" in including civil penalties in amount in controversy); Allen v. Mercedes-Benz USA, LLC, No. 2:25-cv-01222-

DJC-JDP, 2025 WL 1743919, at *4 (E.D. Cal. Jun. 24, 2025) (same).

Finally, Plaintiff argues that the penalty calculations are impermissibly speculative because they are derived from an unsupported actual damages valuation. Mot. at 10-11. The Court again disagrees. The Court has determined that Defendant sufficiently met its burden to establish actual damages based on evidence and analysis.

Using the underlying actual damages calculation, $36,319.12, the inclusion of the civil penalty brings the amount in controversy to $108,957.36. This number well exceeds the requisite jurisdictional threshold. Thus, based on the evidence before the Court, Defendant has met its burden establishing by a preponderance the amount in controversy exceeds $75,000.

### 3. Attorney's Fees

The amount in controversy is easily satisfied based on Plaintiff's actual damages and civil penalties, which total $108,957.36. As a result, the Court need not consider attorney's fees. See, e.g., Villa v. Nissan North Am., Inc., No. 2:25-cv-03128-DJC-CKD, 2026 WL 353102, at *5 (E.D. Cal. Feb. 9, 2026).

### IV.  ORDER

For the reasons set forth above, the Court DENIES Plaintiff's Motion to Remand (ECF No. 9). In addition, Counsel for Plaintiff is ordered to pay $250 to the Clerk of Court no later than May 29, 2026.

IT IS SO ORDERED.

Dated: May 18, 2026

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE

13